## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**IZTOK PLEVNIK**,

        Plaintiff,

v.                        **Case No.**

**MARINEMAX, INC.,**        **JURY TRIAL DEMANDED**

        Defendant.

_____/

## COMPLAINT

Plaintiff, Iztok Plevnik, through his undersigned attorneys, hereby files this Complaint seeking, among other things, damages or rescission for breach of warranty in connection with the sale for $398,046.91 of a 2025 Saxdor® Model SX320 GTO motor yacht (hereinafter "the Yacht" or "Saxdor") on or about April 28, 2025 from Defendant MarineMax, Inc. ("MarineMax"). In support hereof, Plaintiff states as follows:

## JURISDICTION AND VENUE

1.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) because Plaintiff's claims arise under federal law, 15 U.S.C. § 2310(d)(1)(B) (Magnuson-Moss Warranty Act).

2.    The acts and omissions that gave rise to Plaintiff's claims occurred in the State of Florida, and the amount in controversy exceeds $50,000.00 as required by

15 U.S.C. § 2310(d).

3.      Supplemental jurisdiction exists over the Florida state law claims pursuant to 28 U.S.C. § 1367.

4.      Defendant waived mediation as a predicate to filing this suit under paragraph ¶ 15 of the Final Purchase Agreement by refusing to mediate notwithstanding an agreement between the parties to use Robert Glenn, Jr. as a mediator. Exhibit "1".

5.      This Court has personal jurisdiction over Defendant, pursuant to Florida Statutes §§ 48.193(1)(a)(1), and (6), because they conduct substantial business in this District; or Plaintiffs' claims arise out of Defendant's operating, conducting, engaging in, or carrying on a business or business venture in this District.

6.      This Court has supplemental jurisdiction to the extent required to adjudicate any state law claims necessary to address all issues and claims raised in the pleadings.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant is located in this District and the parties contractually agreed to litigate any disputes arising under paragraph ¶ 15 of the Final Purchase Agreement in this District. Exhibit "2".

## THE PARTIES

8.      Plaintiff, Iztok Plevnik, is an individual person residing in Jupiter, Florida.

9.     Defendant MarineMax is a Florida corporation located at 1095 N. Highway A1A, Jupiter, FL 33477, with a principal place of business located in the Middle District of Florida at 502 Brooker Creek Blvd., Oldsmar, FL.

10.     MarineMax is engaged, among other things, in the business of selling boats and yachts and associated warranties in interstate commerce.

11.     MarineMax is amenable to service via its Registered Agent: Corporate Creations Network, Inc., 801 US Highway 1, North Palm Beach, FL 33408.

## FACTUAL ALLEGATIONS

12.     On or about April 28, 2025, Plaintiff, Iztok Plaintiff, purchased a 2025 Saxdor Model SX320 GTO from Defendant MarineMax, Inc., an authorized Saxdor dealer located in Jupiter, Palm Beach County, Florida, for $398,046.91. See attached Exhibit "2".

13.     Plaintiff purchased the Yacht for personal, family, and recreational purposes, including offshore cruising, overnight trips, and leisure use in Florida waters.

14.     At the time of sale, Defendant represented that the Yacht was new, free from defects, fit for recreational marine use, and covered by written and implied warranties.

15.     The purchase included add-on options and equipment such as radar, Starlink® connectivity, solar panels, glass doors, SeaDek® flooring, trim, cushions, anchor chute, razor light, and custom fittings.

16.    Defendant's warranties obligated it to repair or replace defective components within a reasonable time.

17.    Immediately following delivery, the Yacht began to exhibit serious and recurring defects, including structural, mechanical, electrical, and cosmetic failures.

18.    Plaintiff promptly notified Defendant of these issues and repeatedly delivered the Yacht for repair.

19.    Despite multiple service attempts, defects persisted or recurred, rendering the Yacht unsafe and unreliable. The value of the Yacht has plunged.

20.    The Yacht has suffered from, *inter alia*, at least the following major and recurring failures:

   a)  Air Conditioning System: Failed five (5) times, depriving Plaintiff of basic habitability. Required repeated repair attempts, with Defendant unable to identify or permanently correct the underlying defect.

   b)  Side Doors: Failed to close and lock on four separate occasions. Clips securing side doors repeatedly broke, creating safety hazards at sea.

   c)  Anchor System: Anchor chain dislodged and bent metal hardware, requiring manual retrieval. Malfunction occurred on at least two occasions, posing a navigation and collision hazard.

   d)  Engines: Starboard engine failed during operation at approximately 30

knots, causing the Yacht to veer sharply to the right. Event occurred multiple times, nearly causing collision with other vessels. Engine defects pose imminent safety risks to passengers and others on the water.

e) Roof and Ceiling: Square roof panels detached eight times, flying off during use. Entire roof structure collapsed once; small roof pieces continuously detach. Ceiling panels loosened and required replacement.

f) Electrical and Navigation Systems: Alarm messages repeatedly appeared: "Alarm source Missing" and "No Tide Stations Found". Navigation lights failed at least three (3) times, preventing safe and lawful night operation. The onboard brand-new radar never functioned, depriving Plaintiff of safe navigation and endangering any passengers aboard the Yacht.

g) Structural Components: Door gaskets repeatedly tore; MarineMax admitted concern that the gasket design was defective. Wood railings cracked, and wood moldings buckled inside the cabin. Magnets for securing glass over the grill were never installed.

h) Interior and Utility Systems: Refrigerator on starboard side never cooled properly and remained unrepaired. Seat systems jammed, preventing access to electrical and solar panel switches. Grill cover glass and interior moldings

detached.

 i) Cosmetic and Material Failures: Black rubber runners on both sides of the hull peeled away; "Mercury" lettering on the engines peeled off.

21. The Saxdor Yacht was a lemon by any yardstick. It was riddled with material defects upon purchase as elaborated above. The boat was unusable for approximately seventy-five percent (75%) of the time it has been in Plevnik's possession. Plaintiff was able to use the boat for only minimal hours since its purchase.

22. MarineMax took the Yacht for repairs between June 7, 2025, and June 17, 2025, and again from July 13, 2025, to August 3, 2025. However, Defendant returned the Yacht before completing the repairs. From June 17, 2025, to July 13, 2025, the Yacht was in the Plaintiff's backyard, but it was unusable. From August 3 to September 16, 2025, the Yacht remained in the Plaintiff's possession, but no progress towards repair, remedy, replacement, or refund of the Yacht was made.

23. Subsequently, the Yacht was returned to MarineMax on or around September 16, 2025, where it currently remains.

24. Defendant's own service communications confirm ongoing defects and incomplete repairs. In June 2025, MarineMax admitted that key components, including the anchor chute, solar panels, SeaDek® flooring, gaskets, and cushions, remained on backorder.

25.    In August 2025, MarineMax acknowledged that door gaskets were defective in design and prone to repeat tearing. That same month, Defendant arranged for technicians to address ceiling panel failures.

26.    Defendant MarineMax displayed staggering incompetence and gross negligence in its numerous failed attempts to repair the defects over several months.

27.    None of Defendant's shoddy, incomplete and half-hearted repair or replacement attempts have been successful.

28.    The defects made the Saxdor unsafe for occupants. Indeed, their lives were endangered. Among other things, a collapsed roof injured Plaintiff's mother-in-law that required three (3) stitches.

29.    The Yachts numerous defects substantially impair the Yacht's safety, reliability, and value.

30.    Plaintiff has lost the use and enjoyment of the Yacht, incurred significant out-of-pocket expenses, and been deprived of the benefit of the bargain.

31.    Defendant's repeated failures to cure defects constitute breaches of both express and implied warranties under the Magnuson-Moss Warranty Act 15 U. S.C. §2301*, et seq*. ("MMWA"), the Uniform Commercial Code ("UCC"), and Florida law.

32.    The MMWA, 1 5 U.S.C. § 2301, *et seq.*, applies to this transaction because:

a) The Vessel is a "consumer product" as defined by 15 U.S.C. § 2301(1)

b) Plaintiff is a "consumer" as defined by 1 5 U.S.C. § 2301(3).

c) Defendant is a "supplier" and " warrantor" as defined by 1 5 U.S.C. § 2301 (4)-(5); and

d) Defendant's written warranties and implied warranties fall within the Act's provisions.

33.    The warranty restrictions, disclaimers and/or limitations contained in MarineMax's sales documents, attached hereto as Exhibit "1", are unconscionable under Fla. Stat. §627.302, *et seq*.; ineffective under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*, violate the FTC rules interpreting the MMWA and violate Defendant's duty of good faith imposed under the UCC as a matter of law.

34.    Fla. Stat. § 672.719(2) provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose remedy may be had as provided in this Code."

35.    Comment 1 to section 2-71 9 explains the policy behind this section:

> [ I] t is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus . . . where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive

either party of the substantial value of the bargain it must give way to the general remedy provisions of this Article.

36.     Failure of the warranty to meet its essential purpose because of MarineMax's and/or its agents failure or inability to repair the Yacht provides Plaintiff with the general remedies under MMWA, the UCC and Florida law, as set forth herein, which includes but is not limited to damages, refund or revocation of acceptance along with interest, attorneys' fees and costs.

37.     The remedy of repair fails in its essential purpose because (1) after numerous attempts to repair the issues of the Yacht, MarineMax and/or its agents have been unsuccessful; (2) and the remedy of repair does not satisfy the purpose of rectifying defects of the Yacht under the circumstances of this case where the entire Yacht is effectively rendered defective, unreliable, unmerchantable, nonconforming, unfit, unseaworthy, dangerous and incapable of being repaired.

38.     The limitations on remedies further render any warranties offered as illusory, thereby depriving Plaintiff of reasonable protections against breach and the fair quantum of remedies guaranteed by the MMWA, the UCC and Florida law.

39.     All conditions precedent to the bringing of this action have been performed have occurred or have been waived.

## COUNT I - VIOLATION OF MAGNUSON-MOSS WARRANTY ACT ("MMWA") 15 U.S.C. § 2301, *et seq.*

40.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 39, above, as though fully set forth herein.

41.    The Yacht is a consumer product under 15 U.S.C. § 2301(1), distributed in interstate commerce.

42.    Defendant is a supplier and warrantor of the product under 15 U.S.C. § 2301(4)-(5).

43.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

44.    Defendant breached its written warranty by failing to repair or replace defective components in a reasonable time.

45.    Any attempt by Defendant to disclaim or limit their implied warranties is unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers, including Plaintiff, about the defect(s).

46.    Further Affording Defendant additional opportunity to cure its breach of warranties is unnecessary and futile. At the time of sale and all relevant times thereafter, Defendant knew or were reckless in not knowing of the material misrepresentations and omissions concerning the standard, quality, or grade of and the existence of the defects, but failed to repair or replace the defect and/or disclose the defect.

47.    Under the circumstances, the remedies available under any informal

settlement procedure would be inadequate, and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford the Defendant a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

48.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.00. The amount in controversy of this action exceeds the sum of $50,000.00, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

49.    Plaintiff is entitled to a full refund, damages, attorney's fees, and costs pursuant to 15 U.S.C. § 2310(d)(2).

## <u>COUNT II- BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY.</u>

50.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 39, above, as though fully set forth herein.

51.    Plaintiff brings this Count against Defendant MarineMax, Inc.

52.    Defendant is a merchant with respect to the goods of the kind at issue in this case.

53.    Defendant, as a merchant, impliedly warranted that the Yacht was fit for ordinary boating purposes. The Yacht is not merchantable, as it cannot safely and reliably operate as intended.

54.    Plaintiff purchased the Saxdor 32 Yacht (HIN SXF32739L425) from

Defendant MarineMax, Inc., an authorized dealer and distributor of Saxdor vessels, located in Jupiter, Florida. At all relevant times, Defendant was distributor, warrantor, and/or seller of the Yacht. Defendant knew or had reason to know of the specific purpose for which the Yacht was purchased, namely, safe, and reliable recreational use for personal and family boating in Florida waters.

55.        Defendant is now and always were at all relevant times herein merchants and sellers of yachts within the meaning of the Uniform Commercial Code, Fla. Stat. § 672.314.

56.    Defendant impliedly warranted that the Yacht was in merchantable condition and fit for the ordinary purposes for which yachts are used, including safe navigation, seaworthiness, and reliable recreational operation.

57.    The Yacht, when sold and at all times thereafter, was not in merchantable condition and was not fit for ordinary use, because it contained multiple inherent and recurring defects, including but not limited to:

    a)  Air conditioning system failures (at least five times);

    b)  Side doors failing to close and lock (at least four times);

    c)  anchor chain detachment and malfunction requiring manual retrieval;

    d)  Starboard engine failure at speed, causing the Yacht to veer dangerously toward collision;

    e)  roof panels and ceiling panels repeatedly detaching or falling;

     f) electrical and navigation failures, including alarms, inoperable lights, and

        radar nonfunction;

     g) defective door gaskets tearing repeatedly;

     h) structural cracks, buckling, and missing safety magnets;

     i) nonfunctional refrigerator and jammed seat lifts; and

     j) cosmetic defects including peeling runners and detached engine lettering.

58. These defects, individually and collectively, rendered the Yacht unfit for safe

recreational boating, substantially impaired its value, and created ongoing safety

hazards.

59. Defendant breached the implied warranty of merchantability by selling

Plaintiff a defective yacht that was not fit for ordinary marine use at the time of sale

and thereafter.

60. Under 15 U.S.C. § 2308(a), MarineMax may not disclaim or modify any

implied warranty when making a written warranty to a consumer or when, at the

time of sale, MarineMax enters into a service contract with a consumer.

61. A warranty that the Yacht was merchantable and fit for its ordinary purpose

was implied by law under general maritime law, Florida Statutes § 672. 314, and the

Uniform Commercial Code § 2-31 4.

62. Defendant received notice of the defects through Plaintiff's repeated repair

demands, warranty claims, and direct service reports, and were afforded ample

reasonable opportunities to cure their breach of implied warranties.

63. Affording Defendant further opportunity to cure would be futile because they have repeatedly failed to remedy defects despite numerous service attempts and instead returned the Yacht with ongoing or new failures.

64. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff has suffered damages, including but not limited to, loss of use of the Yacht, incidental expenses, costs of attempted repairs, and diminished value of the Yacht.

65. Any attempt by Defendant to disclaim or limit the implied warranty of merchantability vis-a-vis Plaintiff is unconscionable and unenforceable.

66. Specifically, Defendant knowingly sold a defective yacht without disclosing the recurring defects; warranty time limits unreasonably favored Defendant, who knew Plaintiff would not discover many defects until after delivery; and a gross disparity in bargaining power existed between Defendant and Plaintiff, with Defendant possessing superior knowledge of latent defects and design flaws.

67. Plaintiff has been excused from performance of any warranty obligations as a result of Defendant's misconduct and ongoing breaches described herein.

68. Pursuant to the Magnuson-Moss Warranty Act, 15 U. S .C. § 2310(d), Plaintiff is entitled to recover costs and expenses, including attorneys, fees, in connection with this action.

## COUNT III- REVOCATION OF ACCEPTANCE.

69.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 39, above, as though fully set forth herein.

70.     The cause of action alleged in this Count IV is brought pursuant to the MMWA, 15 U.S.C. § 2301, *et seq*.

71.     Prior to purchase, at delivery and after delivery, Defendant represented to Plaintiff that the subject Yacht was a capable aquatic vessel, suitable, appropriate, and free of defects for the use intended by Plaintiff as a high quality recreational aquatic vessel.

72.     After acceptance of delivery of the Yacht, Plaintiff learned that the Yacht was not designed, constructed, fabricated, manufactured, or assembled as warranted or represented.

73.     The subject Yacht fails to conform due to the existence of defects in material, design, construction, workmanship, fabrication, manufacturing, and assembly as more particularly set forth above.

74.     The nonconformity and deficiencies in material, design, construction, workmanship, fabrication, manufacturing, and assembly are significant and have directly and substantially impaired the value of the Yacht.

75.     Plaintiff has been denied the benefit he bargained for when purchasing the Yacht.

76.    Plaintiff has not had the benefit of the use of the Yacht.

77.    Plaintiff was simply not sold the goods bargained for and has, therefore, been damaged to the full extent of the purchase price, consequential and incidental costs, as well as attorney's fees and other damages pursuant to statute.

78.    Plaintiff relied upon the representations made by Defendant that they would honor the warranty commitments and repair or replace the Yacht and any defects in materials or workmanship as identified herein, to permit the Yacht to operate as a recreational aquatic vessel as intended.

79.    The Yacht is not constructed in conformity with the bargained for quality represented by MarineMax.

80.    Marine Max's attempt to exculpate itself from compliance with technical and operational standards of the Yacht for health life safety issues is unconscionable and unenforceable under public policy.

81.    The Yacht was delivered to Plaintiff with potentially deadly design and manufacturing defects which renders the boat unsafe to operate in the manner intended.

82.    The Yacht is not fit for the ordinary purposes for which it was intended to be used.

83.    On November 26, 2025, Plaintiff formally revoked its acceptance of the Yacht pursuant to Fla. Stat. §672. 608 and Uniform Commercial Code § 2-608.

Exhibit "3". Defendant has not yet responded after 10 days.

84.     The revocation occurred before any substantial change in the condition of the

Vessel not caused by the defects.

85.     Plaintiff has rescinded acceptance of the Saxdor 32 Yacht (HIN

SXF32739L425) for non-compliance with the warranties and the basis of the

bargain of the parties.

86.     Notice of the vessel's defects was provided to Defendants within a

reasonable time after the discovery of the defects and have been repeatedly

expressed to Marine Max to no avail or ameliorative action.

87.     Defendants have been provided a sufficient opportunity to cure but they have

failed to cure the defects in the vessel.

88.     As a direct and proximate result of Defendant's failure to satisfy its

contractual obligations together with the nonconformity and deficiencies in design,

construction, fabrication, manufacturing and/or assembly of the Yacht, Plaintiff has

elected to revoke its acceptance of the non-conforming Yacht and seeks return of its

purchase price, as well as actual, direct, consequential, incidental, and reliance

damages which include, but are not limited to, the purchase price of the subject

vessel, together with prejudgment interest, costs, and attorneys' fees pursuant to

the MMWA, 15 USC § 2310(d).

## COUNT IV-VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT.

89.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 39, above, as though fully set forth herein.

90.    Defendant MarineMax was engaged in trade and commerce in the sale of boats and consumer aquatic vehicles and related trade or commercial activities in Florida subjecting them to the FDUTPA, § 501.201, *et seq*.

91.    Plaintiff is a "consumer" pursuant to FDUTPA § 501.203 (7) Fla. Stat. (2025).

92.    Plaintiff's private cause of action arises under §§ 501.204 and 501.211 Florida Stat. (2025).

93.    Defendant MarineMax violated §§ 501.203 and 501.211, Fla. Stat., by offending the standards of fairness by providing an express or implied warranty and failing to honor such warranty in connection with the sale to Plaintiff of the Saxdor 32 Yacht (HIN SXF32739L425).

94.    Defendant is liable to Plaintiff for damages pursuant to § 501.211, Fla. Stat.

95.    Plaintiff is entitled to recovery of his attorneys' fees and costs of this action pursuant to §501.2105, Fla. Stat.

## PRAYER FOR RELIEF.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant's and in favor of Plaintiff on Counts I through IV,

above, and award the following relief:

A. Rescission of the purchase contract and related five-year warranty and a full refund of the purchase price of the Saxdor 32 Yacht and companion warranty payments together with reimbursement of incidental and consequential damages incurred as a result of Defendant's breaches;

B. An award of prejudgment and post-judgment interest on all amounts awarded;

C. An award of consequential, compensatory, expectancy, resulting, incidental and reliance damages, prejudgment interest, and for costs, and attorneys' fees pursuant to the Magnuson–Moss Warranty Act, 15 U.S.C. § 2310(d)(2), and applicable Florida law;

D. Such other and further relief as this Court may deem appropriate, just, and equitable.

## JURY TRIAL DEMAND.

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 11th day of December 2025.

_/s/ W. Bruce Del Valle_
W. Bruce Del Valle

Fla. Bar No: 0779962
DEL VALLE LAW PLLC
300 New Jersey Avenue, N.W., Suite 300
Washington, D.C. 20001
Phone: (386) 852-1969; (202) 465-8723
Fax: (866) 685-4552
*Email: brucedelvalle@gmail.com*
Lead Attorney for Plaintiff

Bruce E. Fein, Esquire
Law Offices of Bruce Fein
300 New Jersey Avenue, N.W.,
Suite 300 Washington, D.C. 20001
Phone:  202-465-8728
Email: bruce@feinpoints.com
*Pro hac vice* pending

**Attorneys for Plaintiff IZTOK PLEVNIK.**

# EXHIBIT 1

 **Outlook**

---

**Fw: Plevnik-Marine Max-Mediation**

---

**From** Bruce Fein <bruce@feinpoints.com>

**Date** Mon 11/10/2025 10:55 AM

**To** Iztok Plevnik <ipiztok@gmail.com>

---

fyi

---

**From:** Bruce Fein <bruce@feinpoints.com>
**Sent:** Monday, November 10, 2025 10:54 AM
**To:** Iztok Plevnik <ipiztok@gmail.com>
**Subject:** Re: Plevnik-Marine Max-Mediation

Hi Julie,
I have reached out to Bobby Glenn as mediator.  He is available by zoom November 18 at 10 AM or at 1 PM November 19.  Which date works for you?

The mediation should take 4 hours or less. Among other things, Marine Max will have a full opportunity to critique the evaluation of the boast by Ales to the mediator. We are not prepared to make a counteroffer before mediation echoing Marine Max's earlier position on counteroffers before mediation.

Please alert me within 24 hours if Marine Max wishes to go forward with mediation with Mr. Glenn or considers mediation futile and will not participate.  If the latter, we will treat mediation as exhausted and file suit in the United States District Court for the Middle District of Florida.  We will consider a failure of Marine Max to respond to this email within 24 hours as a waiver of mediation under the Final Purchase Agreement, paragraph 15.
Best,
Bruce Fein
Counsel for Iztok Plevnik

---

**From:** Bruce Fein <bruce@feinpoints.com>
**Sent:** Monday, November 10, 2025 9:58 AM
**To:** Iztok Plevnik <ipiztok@gmail.com>
**Subject:** Fw: Plevnik-Marine Max-Mediation

---

fyi

---

**From:** Julie Aiello <julie.aiello@marinemax.com>
**Sent:** Monday, November 10, 2025 9:56 AM
**To:** Bruce Fein <bruce@feinpoints.com>
**Subject:** RE: Plevnik-Marine Max-Mediation

Your client won't be countering our offer?  MarineMax has made multiple offers to your client, without any movement at all from your client.  Unless he plans to provide some counteroffer, there is no point in

negotiating or mediating.   The declaration you sent from your client's brother-in-law was well short of an expert analysis.  There's no analysis in it, and multiple statements are factually incorrect.

If you don't intend on negotiating regardless of whether it's now or at a mediation, then let me know.



**Julie Cunningham Aiello**
**Litigation Counsel**
501 Brooker Creek Blvd.
Oldsmar, Florida 34467

**Phone** 727-431-9312
**Download** The MarineMax App



MarineMax Disclaimer: This email transmission, and any documents, files or previous email messages attached to it, may contain confidential, privileged and/or proprietary information for the sole use of the intended recipient(s). If you are not an intended recipient or a person responsible for delivering it to an intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is strictly prohibited. If you have received this transmission in error, please: (1) immediately notify me by reply email; and (2) destroy the original (and any copies) of this transmission and its attachments without reading or saving in any manner.

**From:** Bruce Fein <bruce@feinpoints.com>
**Sent:** Friday, November 7, 2025 4:19 PM
**To:** Julie Aiello <julie.aiello@marinemax.com>
**Subject:** Re: Plevnik-Marine Max-Mediation

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Julie,

The brokerage offer does not work for us.  I sent you an expert analysis declaring the boat in the current condition is unsafe for occupants and deteriorating rapidly.  Mediation will be necessary unless you client's attitude is more forthcoming. Thanks.
Bruce

**From:** Julie Aiello <julie.aiello@marinemax.com>
**Sent:** Friday, November 7, 2025 4:11 PM
**To:** Bruce Fein <bruce@feinpoints.com>
**Subject:** RE: Plevnik-Marine Max-Mediation

Great.  Please let me know if the brokerage offer is of interest to your client.  If there's a possibility of resolving before we spend money on mediation or litigation, I'm happy to continue discussions about resolving the dispute.



**Julie Cunningham Aiello**
**Litigation Counsel**
501 Brooker Creek Blvd.
Oldsmar, Florida 34467

**Phone** 727-431-9312
**Download** The MarineMax App

  

MarineMax Disclaimer: This email transmission, and any documents, files or previous email messages attached to it, may contain confidential, privileged and/or proprietary information for the sole use of the intended recipient(s). If you are not an intended recipient or a person responsible for delivering it to an intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is strictly prohibited. If you have received this transmission in error, please: (1) immediately notify me by reply email; and (2) destroy the original (and any copies) of this transmission and its attachments without reading or saving in any manner.

---

**From:** Bruce Fein <bruce@feinpoints.com>
**Sent:** Friday, November 7, 2025 12:55 PM
**To:** Julie Aiello <julie.aiello@marinemax.com>
**Subject:** Re: Plevnik-Marine Max-Mediation

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Julie,
Refund check received. Thanks. I will contact Bobby Glenn to arrange mediation via zoom.
Bruce

---

**From:** Julie Aiello <julie.aiello@marinemax.com>
**Sent:** Friday, November 7, 2025 12:46 PM
**To:** Bruce Fein <bruce@feinpoints.com>
**Subject:** RE: Plevnik-Marine Max-Mediation

Bruce,

I was waiting for confirmation that the check had been issued. The check should be delivered to your office today.  There's a process to cancel the agreement and the refund to be issued and it can take several business days.  I'm not sure what you mean by "move forward next week."  You can rest assured, I didn't think you were procrastinating. If you haven't already spoken with Bobby Glenn's office, I will reach out to get dates to coordinate mediation.

I spoke with my team regarding another offer to your client.  Since your client does not want to keep the vessel and he's not interested in a trade, MarineMax offers to list the vessel for brokerage sale for a reduced commission of 5% in exchange for a release to fully settle the claims.  Please let me know if this will resolve the dispute.

Thanks.



**Julie Cunningham Aiello**
**Litigation Counsel**
501 Brooker Creek Blvd.
Oldsmar, Florida 34467

**Phone** 727-431-9312
**Download** The MarineMax
App

 

MarineMax Disclaimer: This email transmission, and any documents, files or previous email messages attached to it, may contain confidential, privileged and/or proprietary information for the sole use of the intended recipient(s). If you are not an intended recipient or a person responsible for delivering it to an intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is strictly prohibited. If you have received this transmission in error, please: (1) immediately notify me by reply email; and (2) destroy the original (and any copies) of this transmission and its attachments without reading or saving in any manner.

**From:** Bruce Fein <bruce@feinpoints.com>
**Sent:** Friday, November 7, 2025 10:08 AM
**To:** Julie Aiello <julie.aiello@marinemax.com>
**Subject:** Plevnik-Marine Max-Mediation

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Julie,
We are alerting Marine Max that mediation needs to move forward next week. If not, we will treat mediation as waived by your client. We are still waiting for refund check. What is the status? The procrastination bristles with bad faith. Thanks.
Bruce

Get Outlook for iOS

This message and any files transmitted with it are confidential and intended only for the individual named. If you are not the named addressee, you should not read, disseminate, distribute or copy this email. Please notify the sender immediately by email if you have received this email by mistake and delete this email from your system. If you are not the intended recipient, you are hereby notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. Privacy policy

# EXHIBIT 2

Final Purchase Agreement



**MARINEMAX EAST, INC.**
1095 N HWY AI A
JUPITER, FL, 33477
Phone: (561) 203-3220

| DATE | FQ# | STOCK# | CUSTOMER# | SALESPERSON |
|---|---|---|---|---|
| 28APR2025 | 96874 | 205123 | 943028 | Chad Avery |

| BUYER | HOME PHONE | WORK PHONE | E-MAIL |
|---|---|---|---|
| IZTOK PLEVNIK | 305-775-1354 | | IPIZTOK@GMAIL.COM |

| CO-BUYER | BUYER MOBILE PHONE | FAX NUMBER | CO-BUYER EMAIL |
|---|---|---|---|
| | 305-775-1354 | | |

| STREET ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| 954 MARLIN DR | JUPITER | FL | 33458 |

| ESTIMATED DELIVERY DATE |
|---|
| 30APR2025 |

## DESCRIPTION OF PURCHASE

| MAKE | MODEL | COLOR | YEAR | i 8 1 N E W ☐ PRE-OWNED | HIN |
|---|---|---|---|---|---|
| SAXDOR | SX320GTO | GREY HULL | 2025 | | SXF32739L42S |

| ENGINE MAKE | MODEL | YEAR | HP | SERIAL NO. |
|---|---|---|---|---|
| MERCURY | 300 VS WHT JPO | | 300 | 3B532537 |
| MERCURY | 300 V8 WHT JPO | | 300 | 3B543846 |

| TRAILER MAKE | MODEL | YEAR | | SERIAL NO. |
|---|---|---|---|---|
| | | | | |

| INCLUSION MAKE | MODEL | YEAR | BRAND | SERIAL NO |
|---|---|---|---|---|
| | | | | |

| STANDARD EQUIPMENT | OPTIONAL EQUIPMENT | DEALER INSTALLED OPTIONS |
|---|---|---|
| 2025 STANDARD EQUIPMENT | SAXDOR 320 GT/GTO + 2 X MERCURY VS AMS 300 Black | BOAT PREPARATIONS |
| 3 X INDIVIDUAL SEATS AT DRIVERS ROW | Joystick Control (JPO) available only with VS engines | BOAT INSPECTION |
| UPHOLSTERY "SAHARA SAND" | White twin engine available when engine option is selected | GO BOATING KIT |
| GELCOAT ON DECK AND HULL-WHITE | Marble upholstery | FULL TANK OF FUEL |
| WET BAR MODULE | Storm Grey Hull | DELIVERY ORIENTATION |
| ELECTRIC OPENING SIDE TERRACES | Soft deck flooring (cannot be combined with Flexiteek flooring) | LARGEST SERVICE NETWORK |
| INTEGRATED HANDRAILS ON DECK | ADVANCED NAVIGATION PACKAGE (only for GTO) | CONTINUING TRAINING |
| FIXED SIDE WINGS FOR EASY SIDE BOARD | 2 x Simrad NSSI2 Evo3S | GETAWAYS |
| TELESCOPIC BATHING LADDER | Simrad RS100-B VHF and Class-B AIS w. splitter | ALL INCENTIVES INCLUDED |
| 2XFLUSH MOUNTED HATCHES ON FRNT DECK | Simrad Echosounder P79 | VPS |
| HANDLES AND CLEATS | Saxdor User interface with system monitoring | |
| QUICK FENDER RELEASE SYSTEM | Mercury integration | |
| ANTI-SKID FINISHING DECK+HATCHES | TOILET AND FRESH WATER PACKAGE UPGRADE | |
| POWER STEER W/ADJUST STEER WHEEL | Fresh water system | |
| MERCVESSELVIEW MOBILE | Electric toilet | |
| MERC ACTIVE TRIM | Black water tank | |
| WIRELESS CHARGING+ 12V OUTLETS | Macerator | |
| LED NAV LUGHTS | Deck and bathroom handheld bidet shower | |
| BILGE PUMPS ELECT AND MANUAL | Shore Power System US 120V PACKAGE | |
| FIXED FUEL TANK WITH SENSOR | Mastervolt charger 35 amp | |
| FIRE EXT STORAGE WITH FIRE PORT | "Shore power system with intake, galvanic isolator and fuse-box" | |
| COMFORT AND READING LIGHTS | Shore power cable 15 meter | |
| FRONT CABIN COMFORT MATTRESS | Electric panel for AC and DC in cabin | |
| CARPET IN FRONT CABIN | Wall sockets | |
| LED INTERIOR LIGHTS | HOT CLIMATE PACKAGE 120V US 6 kWh | |

| STANDARD EQUIPMENT | OPTIONAL EQUIPMENT | DEALER INSTALLED OPTIONS |
|---|---|---|
| TOILET W/SEA WATER FLUSH+ BLACK WATER TANK | Air conditioning in sleeping cabin | |
| | Generator Replacement System (incl Mastervolt 6kW Lithium battery) | |
| MIRROR IN FRONT CABIN | Mastervolt CombiMaster 230 volt - 3kW. 12 volt - 100 amp | |
| FRONT DECK AND WET BAR CUP HOLDERS | Additional 6kW Lithium Battery (available only with Hot Climate Package) | |
| LEATHER STEERING WHEEL | Zipwake Interceptors System | |
| CUP HOLDERS-CONSOLE+ PASSENGERS | Zipwake mini controller | |
| GLASS HOLDERS ON CONSOLE | Bow thruster (cannot be combined with Advanced JPO Package) | |
| ROOF VENTS IN FRONT CABIN | Cataput bow windlass with 40 m chain | |
| HORN | Kenyon Electric Grill 120V | |
| SAXDOR DOCUMENT BAG | Upgrade to adv audio package w/amp and 6 speakers+ subwoofer | |
| | Refrigerator in wetbar port side 51 litres with freezer compartment | |
| | Fridge in wetbar starboard side 51 litres. Drink model - no freezer | |
| | Curtains in front cabin and mosquito nets | |
| | Aft sunshade carbon (only for GTO) | |
| | Deck lights | |
| | Front deck sunbed including cover | |
| | Sliding sofa and aft sunpad with white GRP (RTM) table & covers | |
| | Upgrade for electrical table legs for SX320GTO-0-021 | |

## DESCRIPTION OF TRADE· IN

| MAKE | MODEL | SERIAL | YEAR |
|---|---|---|---|
| | | | |

Buyer is solely responsible for the payment of all applicable local, state and/or federal taxes.

Buyer is responsible for any tariffs enacted after the date of this agreement associated with the importation of this product. If Buyer fails to pay such tariffs, upon closing, Seller has the option, in its sole discretion, to cancel this Purchase Agreement.

All applicable title, reg, doc, filing and dealer fees represent costs and profits to the dealer for preparing documents related to the sale.

Buyer agrees that the balance due will be paid by WIRE TRANSFER or at time of sale. If at time of sale, this agreement is not final and binding on Seller unless (1) Buyer's credit has been approved by a bank or finance company that agrees to purchase a retail installment contract based upon this agreement, (2) appropriate financing disclosures are made, and (3) Buyer has executed a retail installment contract and security agreement.

Please do not wire money until verbally confirmed with store Business Manager.

For in-stock vessels, an initial deposit of 10% is due within five days of execution of this Agreement. Buyer must close transaction within 5 business days of the contract's written date unless the Seller agrees otherwise in writing.          1/nitial here)

For ordered vessels, an initial deposit of 20% Is due within five days of execution of this Agreement. Buyer must close transaction within 5 business days of the  vessel's arrival.          {Initial here)

### PRICING

| | |
|---|---|
| SALE PRICE | 358,024.00 |
| TRADE ALLOWANCE | 0.00 |
| DOCUMENT FEE | 0.00 |
| **NET SALE** | **3S8,024.00** |
| SALES TAX | 19,015.91 |
| TITLE, REG, DOC, FILING & DEALER FEES | 1,995.00 |
| MECHANICAL PROTECTION | 14,513.00 |
| APPEARANCE PROTECTION | 4,499.00 |
| **SUBTOTAL** | **398,046.91** |
| DEPOSIT | 30,027.91 |
| BALANCE DUE ON TRADE | 0.00 |
| **UNPAID BALANCE** | **368,01g.oo** |

## ACCEPTANCE OF VESSEL

"I hereby accept ownership ofthe Vessel and risk of loss and acknowledge  and agree that I have procured and will maintain adequate insurance on the Vessel from and after the date hereof.  In the event that MarineMax retains possession of my Vessel after the date hereof, I acknowledge  that MarineMax has retained possession at my request. I agree that I am solely responsible for the Vessel, risk of loss and insurance during and after MarineMax's possession.  I have reviewed my vehicle owner's manual for towing guidelines, and the total weight of both Boat and Trailer that I am purchasing (if applicable), are within Manufacturer's specification for towing."

X ·_sҒGiiiAtUR"i:""6"I=·eovER··

• DATE

X ·s"iGiiiAtuR·i:·oF·coƷeover··

.DATE

**ADDITIONAL TERMS AND CONDITIONS**

1. **MANUFACTURER'S WARRANTY.** The boat, motor and accessories sold pursuant to this Agreement are sold subject only to applicable manufacturer's warranties, if any, except as otherwise expressly provided in this Agreement.

2. **DISCLAIMER OF WARRANTIES: THE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER"AS IS" AND SELLER MAKES NO WARRANTIES ON ITS OWN BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE,** unless Seller gives Buyer a written warranty on its own behalf or Seller enters into a service contract in connection with this sale or within 90 days of sale. If Seller gives Buyer a written warranty on its own behalf or Seller enters into a service contract in connection with this sale or within 90 days of sale, then any implied warranties shall be limited in duration to the duration of Seller's written warranty or service contract. **SELLER DISCLAIMS AND SHALL NOT BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, OR INDIRECT DAMAGES OF ANY NATURE. EXCEPT AS SET FORTH HEREIN, ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF FITNESS AND MERCHANTABILITY, ARE EXPRESSLY EXCLUDED AND DISCLAIMED TO THE MAXIMUM EXTENT PERMITTED BY LAW. THE RIGHTS AND REMEDIES DESCRIBED HEREIN SHALL BE THE SOLE AND EXCLUSIVE REMEDY AGAINST SELLER. NO OTHER REMEDIES ARE AVAILABLE TO BUYER, INCLUDING BUT NOT LIMITED TO, REVOCATION OF ACCEPTANCE AND RESCISSION. BUYER AGREES NO OTHER REMEDIES ARE AVAILABLE TO BUYER, INCLUDING BUT NOT LIMITED TO, REVOCATION OF ACCEPTANCE AND RESCISSION.**

3. **CLOSING; DELIVERY.** If the boat, motor and/or accessories purchased pursuant to this Agreement is in stock, Buyer shall close this transaction within five (5) business days of executing this Agreement, unless otherwise agreed in writing signed by Seller. If Seller orders the boat, and/or motor being purchased pursuant to this Agreement, Buyer agrees that the estimated delivery date specified on the first page hereof is subject to any delays, from whatever cause occurring in the manufacturer's delivery of the boat, motor and/or accessories to Seller. Buyer further agrees that Seller shall not be liable for any delay caused by circumstances beyond Seller's reasonable control, nor shall any such delay be grounds for cancellation of this Agreement. If the boat, motor and/or accessories have not been received by Seller by the specified estimate delivery date, Seller agrees to notify Buyer when such boat, motor and/or accessories are ultimately received by it. Buyer agrees to close this transaction, and to pay the balance of the purchase price, within five (5) business days of receiving notice. The boat, motor and/or accessories purchased pursuant to this Agreement are delivered F.O.B. at Seller's location designated on the first page of this Agreement. Delivery of the boat, motor and/or accessories being purchased pursuant to this Agreement is subject to payment in full of the balance due at the time of closing.

4. **BUYER'S DEFAULT; LIQUIDATED DAMAGES.** If Buyer fails to close the transaction and/or pay the full balance due by the closing date, Buyer will be deemed in default of this Agreement. In the event of Buyer's default, Seller shall retain the initial deposit amount, not to exceed 10% of the sale price, as liquidated damages, in full and final settlement of all claims between the parties, and the parties shall be relieved of all obligations under this Agreement. Any remaining funds from the Deposit will be returned to Buyer. Buyer agrees that the amount of such liquidated damages is reasonable in light of the anticipated or actual harm caused by failure, the difficulty of proof of loss, and the non-feasibility of otherwise obtaining an adequate remedy. These liquidated damages are intended by the Buyer and the Seller to be a reasonable forecast of the probable harm suffered in case of a breach of contract, as actual damages are very difficult to ascertain or estimate, and this provision is not intended to be construed as a penalty.

5. **TRADE-IN.** Buyer warrants that any traded-in boat, motor and/or accessories, are owned solely by Buyer, free and clear of all liens, encumbrances and security interests of any kind, except as noted otherwise in this Agreement. Buyer agrees that any boat, motor and/or accessories to be traded-in by Buyer as part of this sale, if any, are subject to appraisal, survey and/or sea trial by Seller before final acceptances thereof, and that any trade-in allowance set forth on the first page of this Agreement may be adjusted or rescinded entirely to account for any defects or conditions discovered through such investigation which affect the value of the boat, motor and/or accessories. Buyer understands that Seller intends to immediately attempt to resell the boat, motor and/or accessories being traded-in. Buyer agrees to immediately execute and deliver to Seller such documents of title as are necessary to enable Seller to sell the traded-in boat, motor and/or accessories to a prospective third-party purchaser.

6. **PRIOR USE.** Buyer acknowledges that a new boat being purchased pursuant to this Agreement may have hours of use prior to delivery to Buyer. This use may be the result of pretesting of the boat by the manufacturer, Seller, or potential buyers, as well as on-water transportation of the boat to the delivery site. If Vessel is new and has in excess of 25 Engine Hours please review paragraph below (if applicable)

☐ If checked, Buyer acknowledges that Vessel has **D** hours of use, as a result of pre-testing, sales activities, or transportation by the manufacturer or dealer

7. **MODEL OR DESIGN CHANGES.** Buyer understands that the manufacturer retains the right to make changes in the model or design of its new boats, as well as its accessories, at any time. Buyer agrees that any such changes will not obligate either Seller or the manufacturer to make corresponding changes in the particular boat, motor and/or accessories covered by this Agreement, either before or after the delivery thereof to Buyer.

8. **ENTIRE AGREEMENT.** This Agreement constitutes the entire agreement between the parties and no other verbal or written representations, statements, claims or inducements are incorporated into this Agreement, and are void and have no effect, unless in writing and signed by both parties. This Agreement supersedes any prior Purchase Agreement between Buyer and Seller for the purchase of a boat, motor(s) and/or accessories that had not been consummated. **SELLER DISCLAIMS ANY REPRESENTATIONS OR STATEMENTS BY ANY AGENTS, EMPLOYEES OR REPRESENTATIVES OF SELLER, WHETHER VERBAL OR IN WRITING, INCLUDING IN ADVERTISEMENTS OR BROCHURES. EXCEPT AS SPECIFICALLY SET FORTH IN THIS AGREEMENT, BUYER DISCLAIMS RELIANCE ON ANY REPRESENTATIONS OR STATEMENTS BY ANY AGENTS, EMPLOYEES OR REPRESENTATIVES OF SELLER, WHETHER VERBAL OR IN WRITING, INCLUDING IN ADVERTISEMENTS OR BROCHURES, AND BUYER HAS NOT RELIED UPON ANY SUCH REPRESENTATIONS OR STATEMENTS OTHER THAN THE REPRESENTATIONS AND STATEMENTS MADE IN THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO THE CONDITION, CHARACTERISTICS, AND/OR HISTORY OF THE VESSEL, ITS ACCESSORIES AND/OR APPURTENANCES. BUYER ALSO WAIVES ANY RIGHTS OR CLAIMS ARISING FROM ANY SUCH STATEMENTS, CLAIMS, INDUCEMENTS, OR REPRESENTATIONS, INCLUDING BUT NOT LIMITED TO CLAIMS OF FRAUD AND/OR MISREPRESENTATION RELATING TO THE PURCHASE OF THE VESSEL, THE VESSEL, ITS ACCESSORIES, AND/OR APPURTENANCES.** ·

9. **ATTORNEY'S FEES.** In the event it is necessary for Seller to employ an attorney to enforce the terms of this Agreement or to defend any lawsuit arising out of this Agreement, then Buyer shall pay all of Seller's costs, including reasonable attorney's fees, whether incurred in trial, appellate or bankruptcy court proceedings, plus court costs, deposition, investigation, travel and any other necessary expenses unless a judgment is entered against Seller for the complete relief sought in any complaint or pleading.

10. **GOVERNING LAW.** The parties agree that this agreement shall be governed by the laws of the state Florida.

11. **ASSIGNMENT.** This Agreement may not be assigned by the Buyer without the express written approval of the Seller.

12. **SEVERABILITY.If** any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force and shall be enforced to the fullest extent of the law or modified to achieve the same intent. Where a provision can be construed as valid, it shall be so construed.

13. **BINDING NATURE OF AGREEMENT.** This Agreement will be binding on the parties and their respective heirs, legal representatives, successors and assigns.

14. **NONDISPARAGEMENT.** Buyer agrees that he/she shall not make disparaging comments about MarineMax, Seller, or any of their respective employees, shareholders, and directors including without limitation in any print or broadcast media, any public network such as the Internet, any other outbound data program such as computer generated mail, reports or faxes or any source likely to result in publication or computerized access or social media.

1**5.DISPUTE RESOLUTION; GOVERNING LAW; AND VENUE.** If a dispute arises from or relates to this Agreement or the breach thereof, including any related tort claims, and if the dispute cannot be settled through direct discussions, the parties agree to endeavor first to settle the matter by mediation with a qualified mediator of the parties' choosing before initiating litigation. The parties hereby agree to personal jurisdiction, and to file and litigate all demands, claims or suits resulting from or arising out of this Agreement before the Sixth Judicial Circuit Court in and for Pinellas County, Florida, or the United States District Court for the Middle District of Florida Tampa Division, to the exclusion of the courts of any other country, state, county, or city. Any dispute arising out of this transaction, whether sounding in contract, tort, or otherwise and any litigation shall be governed by the laws of the State of Florida. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY LITIGATION, ACTION, PROCEEDING, CROSS-CLAIM, OR COUNTERCLAIM IN ANY COURT (WHETHER BASED ON CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF, RELATING TO OR IN CONNECTION WITH (i) THIS AGREEMENT OR THE VALIDITY, PERFORMANCE, INTERPRETATION, COLLECTION OR ENFORCEMENT OF THIS AGREEMENT OR (ii) THE ACTIONS OF SUCH PARTY IN THE NEGOTIATION, AUTHORIZATION, EXECUTION, DELIVERY, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THIS AGREEMENT.

**SELLER IS AN INDEPENDENT BUSINESS ENTERPRISE AND IS NEITHER AN AGENT NOR A COWARRANTOR OF ITS DISTRIBUTOR OR THE MANUFACTURER.**

**BUYER ACKNOWLEDGES RECEIVING A FULLY COMPLETED COPY OF THIS AGREEMENT. BUYER ACKNOWLEDGES READING AND UNDERSTANDING ALL OF THE TERMS AND CONDITIONS IN THIS AGREEMENT, INCLUDING THE TERMS AND CONDITIONS ABOVE.**

X
· **SIGNATURE OF DEALER···**

X
**SIGNATURE OF BUYER**

**"S"iG"riiAtiJR"i "6"i"=co BUYER········**

**DATE**

# EXHIBIT 3

Law Offices of Bruce Fein
300 New Jersey Avenue, N.W., Suite 300
Washington, D.C. 20001
Phone: 202-465-8728; 703-963-4968
Email: Bruce@feinpoints.com

November 26, 2025

MarineMax East Inc.
c/o Jack Thompson, Joshua Levine, Nick Pavlakis, Chad Avery and
Julie Aiello
1095 N. Highway A1A
Jupiter, FL 33477

*Re: Iztok Plevnik's Revocation of Acceptance of 2025 Saxdor Yacht Model SX320GTO, HIN#: XF32739L 42S, along with Mercury 300 hp outboard engines, serial nos: 3B53253, 3B543846. Purchased on April 28, 2025, pursuant to Florida Stat §672.608(1)(a) and UCC §2-608.*

## NOTICE OF BREACH OF IMPLIED WARRANTY AND REVOCATION OF ACCEPTANCE

Dear Messrs. Thompson, Levine, Pavlakis, Avery and Ms. Aiello:

Our Firms represent Iztok Plevnik ("Owner") in the above-referenced matter. This letter constitutes formal notice that Owner hereby revokes acceptance of the above referenced Saxdor boat Model SX320GTO (Saxdor Yacht) purchased from MarineMax on or about April 28, 2025, under Fla. Stat. §672.608(1)(a) and Uniform Commercial Code §2-608. Mr. Plevnik accepted the Saxdor Yacht on the reasonable assumption that material defects would be cured but they have not been seasonably cured during the seven (7) months that have elapsed since purchase.

MarineMax was repeatedly alerted to the continuing defects and the initial defects identified on the date of purchase. But they remain unfixed while new defects have been discovered and reported to MarineMax. MarineMax's repeated promises to cure the defects remain unfulfilled to this very day.

The Vessel's numerous defects, as outlined in attached Exhibit A, breach the implied warranty of merchantability under Fla. Stat. § 672.314 and the Magnuson Moss Warranty Act, 15 U.S.C. §2310(d). The severe defects, fit and finish, operational and structural issues were latent, existed at the time of sale, and render the Saxdor Yacht unsafe, unseaworthy, and unfit for its ordinary purpose.

The Saxdor Yacht was neither constructed nor designed properly. The Owner purchased the Vessel for safe marine cruising and family enjoyment, but the Saxdor Yacht is incapable of safely or effectively performing any of its essential functions. Simply put, it is unseaworthy and a shoddy, substandard "lemon". Despite multiple repair attempts, the Yacht's many defects persist and substantially impair the Saxdor Yacht's value. Even with repairs, the Saxdor Yacht

MarineMax East Inc.
December 1, 2025
Page **2** of **4**

has a permanent dark history and is no longer marketable.  MarineMax is liable for placing a vessel that is a safety hazard, unseaworthy, unmerchantable, non-conforming to industry standards, and incapable of performing its intended use into commerce.

The Owner hereby revokes acceptance and demands full payment of $398, 046.91 (representing a refund of the purchase price), plus reimbursement for repair costs, expenses, legal fees, and interest) within ten (10) days of the date of this letter.  This is our client's final offer to resolve this matter before proceeding forward with the soon-to-be-filed lawsuit.

### Preservation of Evidence

You are required to preserve and retain all information, communications, documents, data, and electronically stored information that is, or could be, relevant to this dispute, the Yacht, and the numerous electronic, hull, fit and finish, performance, cosmetic and operational defects ("Litigation Hold").  All likely locations of relevant information must be identified, searched, collected, and preserved. Relevant electronically stored information ("ESI") that must be preserved includes, but is not limited to, emails, text messages, instant messages, group chats, digital photographs, video media, audio recording, web pages, social media posts and messages, as well as relevant information that is stored on any mobile phone, voicemail system, computer, laptop, tablet, email server, hard drive, server, digital back-up media or other storage media, such as a thumb drive.  Relevant information must not be discarded or destroyed.  If MarineMax has a records retention schedule or program, such program should be suspended for the time being that this Litigation Hold is in place.  An IT professional should be consulted to assist in implementing this Litigation Hold.  Failure to take adequate steps to collect and preserve relevant evidence, including ESI, could result in sanctions being imposed by a Court for spoliation of evidence. The subject Saxdor Yacht, Model SX320GTO (Saxdor Yacht) is available for inspection and pickup in Jupiter, Florida. Please contact our office to arrange logistics.  All of our client's rights are reserved.

GOVERN YOURSELVES ACCORDINGLY.


Sincerely,


*/s/Bruce Fein*
Bruce Fein

MarineMax East Inc.
December 1, 2025
Page **3** of **4**

# __Exhibit A__

The following is a non-exhaustive list of the many major and recurring components, systems, features and design failures the Yacht has suffered from:

1) <u>Air Conditioning System:</u> Failed five times, depriving Plaintiff of basic habitability. Required repeated repair attempts, with Defendant unable to identify or permanently correct the underlying defect.

2) <u>Side Doors:</u> Failed to close and lock on four separate occasions. Clips securing side doors repeatedly broke, creating safety hazards at sea.

3) <u>Anchor System:</u> Anchor chain dislodged and bent metal hardware, requiring manual retrieval. Malfunction occurred on at least two occasions, posing a navigation and collision hazard.

4) <u>Engines:</u> Starboard engine failed during operation at approximately 30 knots, causing the Yacht to veer sharply to the right. This alarming event occurred multiple times, nearly causing collision with other vessels. Engine defects pose imminent safety risks to passengers and others on the water.

5) <u>Roof and Ceiling:</u> Square roof panels detached eight times, flying off during use. Entire roof structure collapsed once; small roof pieces detached continuously. Ceiling panels loosened and required replacement.

6) <u>Electrical and Navigation Systems:</u> Alarm messages repeatedly appeared: "Alarm source Missing" and "No Tide Stations Found". Navigation lights failed at least three (3) times, preventing safe and lawful night operation. The onboard brand-

MarineMax East Inc.
December 1, 2025
Page **4** of **4**

new radar never functioned, depriving Plaintiff of safe navigation and endangering any passengers aboard the Yacht.

7) <u>Structural Components:</u> Door gaskets repeatedly tore; MarineMax admitted concern that the gasket design was defective. Wood railings cracked, and wood moldings buckled inside the cabin. Magnets for securing glass over the grill were never installed.

8) <u>Interior and Utility Systems:</u> Refrigerator on starboard side never cooled properly and remained unrepaired. Seat lift systems jammed, preventing access to electrical and solar panel switches. Grill cover glass and interior moldings detached.

9) <u>Cosmetic and Material Failures:</u> Black rubber runners on both sides of the hull peeled away; "Mercury" lettering on the engines peeled off.