UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IZTOK PLEVNIK,

        Plaintiff,

v.                                    Case No:   8:25-cv-03393-JLB-AEP

MARINEMAX, INC.,

        Defendant.

_____/

## **ORDER**

Plaintiff Iztok Plevnik filed a complaint (Doc. 1) before this Court on December 12, 2025, seeking, among other remedies, damages or rescission for breach of warranty in connection with the sale of a yacht from Defendant MarineMax, Inc.  Defendant filed a Motion to Dismiss Plaintiff's Complaint.  (Doc. 15).  Plaintiff responded.  (Doc. 17).  The Court **GRANTS in part** Defendant's Motion to Dismiss.

## **BACKGROUND**[1]

On or about April 28, 2025, Plaintiff, Iztok Plevnik, purchased a 2025 Saxdor Model SX320 GTO from Defendant MarineMax, Inc., an authorized Saxdor dealer located in Jupiter, Palm Beach County, Florida, for $398,046.91.  (Doc. 1 at ¶ 12).  Mr. Plevnik purchased the yacht for personal, family, and recreational purposes,

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). Accordingly, this background section relies on the facts recited in the Complaint. (*See* Doc. 1).

including offshore cruising, overnight trips, and leisure use in Florida waters. (*Id.* at ¶ 13). Plaintiff alleges that at the time of sale, Defendant represented that the yacht was new, free from defects, fit for recreational marine use, and covered by written and implied warranties.[2] (*Id.* at ¶ 14). The purchase included add-on options and equipment such as radar, Starlink® connectivity, solar panels, glass doors, SeaDek® flooring, trim, cushions, anchor chute, razor light, and custom fittings. (*Id.* at ¶ 15). Immediately following delivery, the yacht began to exhibit serious and recurring defects, including structural, mechanical, electrical, and cosmetic failures. (*Id.* at ¶ 17). Plaintiff alleges that Defendant's warranties obligated it to repair or replace defective components within a reasonable time. (*Id.* at ¶ 16). Mr. Plevnik promptly notified Defendant of these issues and repeatedly delivered the yacht for repair. (*Id.* at ¶ 18). Despite multiple service attempts, defects persisted or recurred, rendering the yacht unsafe and unreliable. (*Id.* at ¶ 19). The value of the yacht has plunged. (*Id.*).

The yacht has suffered from, *inter alia*, at least the following major and recurring failures:

> a) Air Conditioning System: Failed five (5) times, depriving Plaintiff of basic habitability. Required repeated repair attempts, with Defendant unable to identify or permanently correct the underlying defect;
> b) Side Doors: Failed to close and lock on four separate occasions. Clips securing side doors repeatedly broke, creating safety hazards at sea;
> c) Anchor System: Anchor chain dislodged and bent metal hardware, requiring manual retrieval. Malfunction occurred on at least two occasions, posing a navigation and collision hazard;

---

[2] The contract signed between the parties, attached to the Complaint as Exhibit 2, excludes warranties from the terms and conditions of the agreement. (Doc. 1 at 29).

> d) Engines: Starboard engine failed during operation at approximately 30 knots, causing the Yacht to veer sharply to the right.  Event occurred multiple times, nearly causing [a] collision with other vessels.  Engine defects pose imminent safety risks to passengers and others on the water;
> e) Roof and Ceiling: Square roof panels detached eight times, flying off during use.  Entire roof structure collapsed once; small roof pieces continuously detach.  Ceiling panels loosened and required replacement;
> f) Electrical and Navigation Systems: Alarm messages repeatedly appeared: "Alarm source Missing" and "No Tide Stations Found."  Navigation lights failed at least three (3) times, preventing safe and lawful night operation.  The onboard brand-new radar never functioned, depriving Plaintiff of safe navigation and endangering any passengers aboard the Yacht;
> g) Structural Components: Door gaskets repeatedly tore; MarineMax admitted concern that the gasket design was defective.  Wood railings cracked, and wood moldings buckled inside the cabin.  Magnets for securing glass over the grill were never installed;
> h) Interior and Utility Systems: Refrigerator on starboard side never cooled properly and remained unrepaired.  Seat systems jammed, preventing access to electrical and solar panel switches.  Grill cover glass and interior moldings detached; and
> i) Cosmetic and Material Failures: Black rubber runners on both sides of the hull peeled away; "Mercury" lettering on the engines peeled off.

(*Id.* at ¶ 20).

The yacht was unusable for approximately seventy-five percent (75%) of the time it was in Plevnik's possession.  (*Id.* at ¶ 21).  Plaintiff has been able to use the yacht for only a minimal number of hours since its purchase.  (*Id.*).  MarineMax took the yacht for repairs between June 7, 2025, and June 17, 2025, and again from July 13, 2025, to August 3, 2025.  (*Id.* at ¶ 22).  However, Defendant returned the yacht before completing the repairs.  (*Id.*).  From June 17, 2025, to July 13, 2025, the yacht was in the Plaintiff's backyard, but it was unusable.  (*Id.*).  From August 3, 2025, to September 16, 2025, the yacht remained in the Plaintiff's possession, but no progress towards repair, remedy, replacement, or refund of the yacht was made.

(*Id.*).  Subsequently, the yacht was returned to MarineMax on or around September 16, 2025, where it currently remains.  (*Id.* at ¶ 23).

Defendant's service communications confirm ongoing defects and incomplete repairs.  (*Id.* at ¶ 24).  In June 2025, MarineMax admitted that key components, including the anchor chute, solar panels, SeaDek® flooring, gaskets, and cushions, remained on backorder.  (*Id.*).  In August 2025, MarineMax acknowledged that door gaskets were defective in design and prone to repeated tearing.  (*Id.* at ¶ 25).  That same month, Defendant arranged for technicians to address ceiling panel failures.  (*Id.*).  None of Defendant's repair or replacement attempts has been successful.  (*Id.* at ¶ 27).

The defects made the Saxdor unsafe for occupants.  Indeed, their lives were endangered.  (*Id.* at ¶ 28).  Among other things, a collapsed roof injured Plaintiff's mother-in-law, who required three (3) stitches.  (*Id.*).  The yacht's numerous defects substantially impair the yacht's safety, reliability, and value.  (*Id.* at ¶ 29).  Plaintiff has lost the use and enjoyment of the yacht and incurred significant out-of-pocket expenses.  (*Id.* at ¶ 30).

On December 12, 2025, Plaintiff filed a four-count Complaint against Defendant before this Court.  (*Id.*).  The Complaint alleges (1) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*, ("Count I") and pursues the remedy of revocation of acceptance pursuant to the MMWA ("Count III"), based on (2) a state law claim of breach of the implied warranty of merchantability ("Count II").  Additionally, the Complaint alleges (3) violation of

the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") under Florida Statutes § 501.201, *et seq.* ("Count IV"). (*Id.*). Defendant files a Motion to Dismiss before this Court. (Doc. 15). Plaintiff responds in opposition. (Doc. 17).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). This plausibility standard is met when the plaintiff pleads enough factual content "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations in a complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 679. "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## DISCUSSION

**I.     Count II's claim is barred by the exclusion of warranties in the contract and therefore Counts I and III's federal claims based on the underlying state claim in Count II also fail as a matter of law.**

Under Florida Statute § 672.316, a seller may disclaim implied warranties if the disclaimer includes the term "merchantability" and is presented in conspicuous writing to the buyer.  Fla. Stat. § 672.316(2)–(3)(a); *see also Fam. Boating & Marine Centers of Fla., Inc. v. Bell*, 779 So. 2d 402, 403 (Fla. 2d DCA 2000); *Rudy's Glass Const. Co. v. E. F. Johnson Co.*, 404 So. 2d 1087, 1089–90 (Fla. 3d DCA 1981).  The statute further provides that language excluding implied warranties of fitness is sufficient if it states, for example, "there are no warranties which extend beyond the description on the face thereof," and implied warranties may be excluded by expressions such as "as is" or "with all faults," or other language that clearly calls the buyer's attention to the exclusion and makes plain that no implied warranty exists.  Fla. Stat. § 672.316(2)–(3)(a).

"The Magnuson-Moss Act merely supplements state-law implied warranties by affording a federal remedy for their breach." *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1315 (11th Cir. 2023) (internal quotation marks omitted) (quoting *Richardson v. Palm Harbor Homes, Inc.*, 254 F.3d 1321, 1325 (11th Cir. 2001)).  Under the MMWA, a supplier is not allowed to disclaim or modify any implied warranty to a consumer regarding a consumer product *if* "(1) such supplier makes any *written* warranty to the consumer with respect to such consumer product, or (2)

6

at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product." 15 U.S.C. § 2308(a) (emphasis added).  And a service contract is defined under the act as "a contract *in writing* to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product." 15 U.S.C. § 2301(8) (emphasis added).

Here, Plaintiff and Defendant entered into a Purchase Agreement for the yacht, which is attached to the Complaint as "Exhibit 2." (*See* Doc. 1 at ¶ 12; *Id.* at 29).  The Purchase Agreement's Additional Terms and Conditions that Plaintiff signed contain a Disclaimer of Warranties that appears as follows:

> **DISCLAIMER OF WARRANTIES: THE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER "AS IS" AND SELLER MAKES NO WARRANTIES ON ITS OWN BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE,** unless Seller gives Buyer a written warranty on its own behalf or Seller enters into a service contract in connection with this sale or within 90 days of sale.
>
> . . .
>
> **ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF FITNESS AND MERCHANTABILITY, ARE**

**EXPRESSLY EXCLUDED AND DISCLAIMED TO THE MAXIMUM EXTENT PERMITTED BY LAW.**

(*Id.* at 29).

As prescribed by Florida Statute § 672.316, Defendant disclaimed the implied warranty of merchantability in conspicuous writing, including the term "merchantability" and using the expression "as is." (*See id.*). Therefore, Defendant explicitly disclaimed any implied warranties on its own behalf in the Purchase Agreement. *See Fam. Boating & Marine Centers of Fla., Inc.*, 779 So. 2d at 403; *Rudy's Glass Const. Co.*, 404 So. 2d at 1089–90. Consequently, Plaintiff's claim in Count II of a breach of the implied warranty of merchantability fails as a matter of law and is dismissed with prejudice.

Because the underlying claim for breach of the implied warranty of merchantability fails due to a valid disclaimer, Plaintiff's MMWA claims in Counts I and III necessarily fail as a matter of law. To invalidate a disclaimer of implied warranties under the MMWA, Plaintiff must show either that Defendant (1) provided Plaintiff with *written* warranties on its own behalf, or (2) entered into a *written* service contract in connection with the sale or within 90 days of the sale. *See* 15 U.S.C. §§ 2308(a); 2301(8). Here, Plaintiff relies on alleged oral representations, merely stating that "[a]t the time of sale, Defendant represented that the Yacht was new, free from defects, fit for recreational marine use, and covered by written and implied warranties," and that "[p]rior to purchase, at delivery and after delivery, Defendant represented to Plaintiff that the subject

8

Yacht was a capable aquatic vessel, suitable, appropriate, and free of defects for the use intended by Plaintiff as a high quality recreational aquatic vessel." (*See id*. at ¶¶ 14, 71, 78). Plaintiff fails to allege any written warranties or a written service contract from Defendant as required by the MMWA to rebut the disclaimer of implied warranties. (*See* Doc. 1 at 3–9). Oral representations are insufficient to prevent a disclaimer of implied warranties under the MMWA. *See* §§ 2308(a); 2301(8). Plaintiff also states that Defendant made representations that it would "honor the warranty commitments and repair or replace the Yacht and any defects in materials or workmanship." (*See* Doc. 1 at ¶ 78). Taken as true, as this Court must, these alleged representations are not *in writing* as needed for the MMWA. Furthermore, subsequent promises to repair or actual repair attempts are not subject to the MMWA. *Mount Sage, Ltd. v. Rolls-Royce Commercial Marine Inc.*, 635 F. App'x 833, 838 (11th Cir. 2016) ("Services related to separate repairs or installations are not covered.") (citing *Robin Towing Corp. v. Honeywell, Inc.,* 859 F.2d 1218, 1223 (5th Cir. 1988); 16 C.F.R. § 700.1(h) (2015) ("[W]arranties which apply solely to a repairer's workmanship in performing repairs are not subject to the [Magnuson-Moss] Act.").

In the face of the written disclaimer by Defendant of all warranties, express or implied, found in the Purchase Agreement, Plaintiff has failed to allege any written warranties or written service contracts from Defendant to invalidate under the MMWA the written disclaimer, valid under Florida Statute § 672.316 as

9

discussed above.  Therefore, Plaintiff's MMWA claims in Counts I and III fail as a matter of law and are dismissed with prejudice.

## II.   The Court declines to exercise supplemental jurisdiction over the remaining state law claim in Count IV.

As an initial matter, this Court lacks independent subject-matter jurisdiction over the remaining state law FDUTPA claim under Count IV.  Federal courts are courts of limited jurisdiction.  Count IV is a state law claim that cannot, by itself, support federal-question jurisdiction.  28 U.S.C. § 1331 ("[D]istrict courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  And there is no diversity jurisdiction where the Plaintiff and Defendant are Florida citizens or entities.  (Doc. 1 at 2–3); *see* 28 U.S.C. § 1332.

Though a federal court may exercise supplemental jurisdiction over state law claims where those claims arise from the same conduct and circumstances as the federal claims, there are no federal claims remaining here because the Court has dismissed the MMWA claims of Counts I and III.  *See* 28 U.S.C. § 1367; (Doc. 1).  Accordingly, the Court lacks subject matter jurisdiction over the state law claim in Count IV.

That said, the Court may decline to exercise supplemental jurisdiction over such claims after the Court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  Whether to exercise supplemental jurisdiction over these state law claims is a decision "vested in the sound discretion of the

10

district court." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002).

"Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). In the interest of judicial economy, convenience, fairness, and comity, "[s]tate courts, not federal courts, should be the final arbiters of state law." *Id.* (citing *Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992)).

Here, the Court declines to exercise supplemental jurisdiction over the state law claim set forth in Count IV. This Court finds, in its discretion, that it should avoid deciding any independent FDUTPA claims that may or may not exist. This is best left to the Florida state courts. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). Consequently, the state law claim in Count IV must be dismissed without prejudice.

## CONCLUSION

Because the federal claims in Counts I and III are dismissed, due to the Court's dismissal of Count II's breach of the implied warranty, there is no independent subject matter jurisdiction for the remaining FDUTPA state law claim in Count IV. *See* 28 U.S.C. § 1367. Furthermore, the Court declines to exercise

supplemental jurisdiction over Count IV, and the state-law claim therein shall be dismissed **without prejudice**.

For the foregoing reasons, it is **ORDERED** that:

1) Defendant's Motion to Dismiss (Doc. 15) is **GRANTED in part and DENIED in part**.

2) The breach of warranty claims in the Complaint (Doc. 1)—the federal MMWA claims of Count I and Count III, as well as the underlying state claim of breach of implied warranty in Count II—are **DISMISSED with prejudice**.

3) The state-law FDUTPA claim in Count IV is **DISMISSED without prejudice**.

4) Plaintiff's motion for summary judgment (Doc. 24) is **DENIED as moot**.

5) **The Clerk of Court is DIRECTED to terminate any pending motions and deadlines and close the file.**

**ORDERED** in Tampa, Florida on July 13, 2026.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

12